UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT E. ALLEN, JR., <br><br> Plaintiff, <br><br> v. <br><br> SANDRA ALLEN, BRANDON WALTERS, CENTERION HEALTH, LLC, <br><br> Defendants. | CAUSE NO. 3:23-CV-857-PPS-JEM |

## OPINION AND ORDER

Robert E. Allen, Jr., a prisoner without a lawyer, is proceeding in this case against three defendants all relating to the treatment he received for a hip injury he sustained while incarcerated at the Westville Correctional Facility. He first claims that "Nurse Allen" was deliberately indifferent to his hip injury on or about January 14, 2023, in violation of the Eighth Amendment. He brings a similar claim against Sergeant Brandon Walters. The third claim is against the Centerion Health LLC, Westville's contractual healthcare provider. He claims that Centerion is liable to him due to a policy of requiring an x-ray before an inmate may go to the hospital, thus prolonging his suffering. [DE 28].

The defendants filed a joint motion for summary judgment, arguing Allen didn't exhaust his administrative remedies before filing this lawsuit. [DE 53]. Allen filed a

response, and the defendants filed a reply.[1] [DE 62; DE 65]. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners must exhaust all available administrative remedies before bringing an action in federal court. 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of

---

[1] Allen also filed an unauthorized surreply. The Local Rules provide only for an opening brief by the moving party, a response brief by the opposing party, and a reply brief by the moving party, without leave of court. N.D. Ind. L.R. 56-1. However, I looked at the information in the unauthorized surreply and found that it does not change the outcome here.

2

proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.*

The defendants provide Allen's grievance records and an affidavit from the prison's Grievance Specialist, which show the following facts: In order to exhaust a grievance, inmates must complete three steps. [DE 53-1 at 2; DE 53-2 at 3]. First, if an inmate is dissatisfied with the grievance office's response to his grievance, he must submit a Level I appeal to the Warden. [DE 53-1 at 4; DE 53-2 at 12]. An inmate begins the appeal process by signing the grievance denial, checking the "Disagree" option, and returning the form to the grievance office. [DE 53-1 at 4]. Second, upon receipt of the returned form, the grievance office will send him a State Form 45473 ("Grievance Appeal form"), which the inmate must fill out and submit to the Offender Grievance Specialist. [DE 53-1 at 4; DE 53-2 at 12]. The Offender Grievance Specialist is responsible for recording the date they received the appeal, forwarding the appeal to the office of the Warden, generating a receipt for the appeal, and forwarding a copy of the receipt to the offender. [DE 53-2 at 13]. Finally, if the inmate is dissatisfied by the Warden's response to his Level I appeal, he must then appeal to the Department Grievance Manger to fully exhaust his administrative remedies. [DE 53-1 at 2; DE 53-2 at 13].

On January 29, 2023, Allen submitted Grievance 150724, complaining that the sergeant who responded after he was injured on January 11, 2023, forced him to crawl to the stairwell and down the stairs to receive medical help. [DE 53-1 at 3; DE 53-4 at 3].

Then, at medical, Nurse Allen gave him naproxen for pain but then put him in a bed in the medical ward until the next afternoon when an x-ray revealed that he was seriously injured, at which point he was taken to the hospital by ambulance. [DE 53-1 at 3; DE 53-4 at 3]. He asked for treatment and to get his meds back, which were taken away twelve days after surgery. [DE 53-1 at 3; DE 53-4 at 3]. He also wanted to be compensated for property loss and for the pain and suffering he endured at the hands of untrained medical staff. [DE 53-1 at 3; DE 53-4 at 3].

On February 10, 2023, the Grievance Specialist issued a response denying Grievance 150724. [DE 53-1 at 3-4; DE 53-4 at 2]. On February 13, 2023, Allen checked that he disagreed with the response and signed the grievance denial. [DE 53-1 at 4; DE 53-4 at 1]. When the grievance office received that form, Allen would have been provided with a Grievance Appeal form in accordance with the IDOC Grievance Policy. [DE 53-1 at 4]. The Grievance Office has no record that Allen submitted a Grievance Appeal form to pursue a Level I appeal of the grievance with the Warden and, therefore, never initiated a Level I appeal to the Warden. [DE 53-1 at 4; DE 53-3 at 1].

The defendants argue Allen didn't fully exhaust Grievance 150724 because he failed to appeal that grievance once he received the response from facility staff and disagreed with the response. [DE 54 at 3]. In response, Allen argues that he forwarded his appeal to Warden Galipeau, and after he did not receive a response within 20 days, he wrote the State Grievance Specialist a brief letter, including his copy of the grievance

4

and waited for a response.[2] [DE 62 at 1]. Allen argues that his administrative remedies were exhausted once the time for the State Grievance Specialist to respond passed without a response.

      I accept as true for purposes of this motion that Allen did, in fact, submit a Level I appeal to the Warden and never received a response. The Offender Grievance Process specifies that if no response to a Level I appeal is received within the time frame in which the Warden must respond, an offender may appeal to the Department Offender Grievance Manager. [DE 53-2 at 13]. To initiate a Level II appeal, the Offender Grievance Policy specifies that an offender must send the pertinent documents to the prison's Offender Grievance Specialist, who then scans the information into the grievance database for the Department Offender Grievance Manager's review. [DE 53-2 at 13]. Allen's statement that he wrote the State Grievance Specialist a letter that included his grievance does not create a genuine dispute of fact over whether he exhausted his administrative remedies. To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Lockett*, 937 F.3d at 1025. Sending a letter directly to the Department Offender Grievance Manager does not serve to exhaust Allen's administrative remedies. While the distinction between submitting the Offender Grievance Appeal to the Offender Grievance Specialist and sending a letter directly to the Department Offender Grievance

---

[2] Allen also argues that he also filed these grievance issues with the ombudsman as well as with the State. [DE 62 at 1]. He attaches several responses he received from the department's ombudsman about various complaints, [DE 62-2 at 3-5], and documents relating to a tort claim he filed with the State, [DE 62-1 at 1-2]. These submissions are outside the grievance process and have no bearing on whether he properly exhausted his administrative remedies

5

Manager may seem hyper technical, it's important to ensure that grievance processes are followed to avoid the commotion and confusion that results when each prisoner follows a grievance process of his own choosing. As stated by the Supreme Court, "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction." *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). Therefore, summary judgment is warranted in favor of defendants.

With his summary judgment response, Allen filed a motion for interrogatories and a motion to produce documents. [DE 63; DE 64]. I considered whether the summary judgment briefing should be delayed pursuant to Fed. R. Civ. P. 56(d) for him to conduct discovery. However, none of the requested information would change the outcome here, so I will deny his motions.

In the motion for interrogatories, Allen lists several questions for the Grievance Specialist, Shannon Smith, who submitted an affidavit for the summary judgment motion. Setting aside the fact that Smith is not a party to this litigation and therefore is not subject to interrogatories under Fed. R. Civ. P. 33, the questions Allen asks would not make a difference in the outcome here. The gist of the interrogatories is that Allen suspects data got lost when the Indiana Department of Correction transitioned in 2023 to DELTA, a new system for tracking grievances, and he includes several questions for the Grievance Specialist about the transfer and the possibility of missing data. [DE 63]. This does not affect the outcome here because, even accepting as true that the DELTA system is missing some of his grievance records, it is still undisputed that Allen did not

6

follow the proper steps to file a Level II appeal after he did not receive a timely response to his Level I appeal.

Allen also asks questions about the accuracy of his grievance history in DELTA because it shows that he filed only two grievances, both in 2023, even though he has been in DOC custody for the past 10 years. This is irrelevant to the summary judgment motion because any grievances filed before 2023 could not have exhausted this claim that occurred in January 2023. He further notes that the grievance history does not include the grievances he filed in March, October, and December 2024. [DE 63 at 3]. However, the grievance history was only through March 4, 2024. [DE 53-1 at 3; DE 53-3 at 1]. The grievances Allen filed later in 2024 would not be on that report and would be irrelevant as to whether he exhausted a claim that occurred in January 2023. Nothing raised here requires the summary judgment briefing to be delayed.

As for the request for production, Allen asks for all documents pertaining to "complaints, requests, ombudsman letters on kiosk, and attorney general facts, and I.A. Investigative Inquiries made on behalf of [his] complaint" so that the court has a "clear and descriptive picture of what [he] was forced to endure both by medical and staff[.]" [DE 64 at 1]. The merits of his claim are not at issue here. As the Seventh Circuit has instructed, "in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The requested information does not shed light on whether Allen properly exhausted his administrative remedies, and therefore is also not a reason to delay ruling on the summary judgment motion.

Defendants move to strike the discovery requests. [DE 67]. It is unnecessary to strike them, as Allen's requests for discovery will be denied and the case will close.

Accordingly, because the undisputed facts show Allen did not properly submit a Level II appeal, defendants have met their burden to show Allen had available administrative remedies he didn't exhaust before filing this lawsuit. Their motion for summary judgment must be granted. Because there are no remaining claims, this case is dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that all dismissals under § 1997e(a) should be without prejudice.").

For these reasons, the Court:

(1) **DENIES** the discovery motions [DE 63; DE 64] and the motion to strike [DE 67];

(2) **GRANTS** the defendants' motion for summary judgment [DE 53];

(3) **DISMISSES** this case **WITHOUT PREJUDICE**; and

(4) **DIRECTS** the Clerk to enter judgment in favor of the defendants and against Robert E. Allen, Jr., and to **CLOSE THIS CASE**.

**SO ORDERED**.

ENTERED: January 23, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

8